MAIETTA ET AL. D/B/A Maietta Trucking Co. ETC. *v.*
GREENFIELD ET AL., CO-PARTNERS T/A Urban
Development Co. and Associates ET AL.

[No. 75, September Term, 1972.]

*Decided December 7, 1972.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ., and ALFRED L. SCANLAN, Associate Judge of the Court of Special Appeals, specially assigned.

*Robert E. Kuczynski* and *Lewis S. Kunkel, Jr.,* with whom were *Kenneth M. Cushman, Howard D. Venzie, Jr.,* and *Pepper, Hamilton & Scheetz* on the brief, for appellants.

*Howard W. Gilbert, Jr.,* with whom were *Mackley, Gilbert & France* on the brief for Security Construction Company, one of appellees. No brief filed on behalf of other appellees.

SCANLAN, J., delivered the opinion of the Court.

In this case, we are asked to consider an appeal (a) prematurely taken, (b) which proves in fact to have been unnecessary, and (c) which asks that this Court advise the court below concerning matters upon which the opposing parties are now in agreement. Such a meritless resort to the appellate process must be dismissed under Rule 835 a 2. This we do, for the reasons now stated.

Appellants, Dennis Maietta and Frank Maietta, d/b/a Maietta Trucking Co. and Maietta Trucking Contractors (hereinafter referred to as "Maietta") are a Pennsylvania partnership. Maietta is a subcontractor working on a low rent public housing project being constructed in Hagerstown known as the Noland Gardens Project. The general contractor for the project is Security Construction Company (hereinafter referred to as "Security.") In addition to Security, the other appellees are Urban

Development Company and Associates, owner of the land on which the project is being constructed, the Equitable Trust Company, and the Hagerstown Housing Authority.

Maietta performed certain work on Noland Gardens. A dispute arose between Maietta and Security. Maietta then filed a mechanic's lien and thereafter filed a petition to foreclose and enforce the mechanic's lien against all the appellees in the Circuit Court for Washington County. Security disputed the petition to enforce the lien, claiming that there was a genuine dispute between the parties as to the amount of work, labor and materials performed or furnished by Maietta. Security also alleged that Maietta had breached the contract it had with Security. On its part, Maietta claimed that Security had breached that contract.

In the court below, Security contended that the dispute between the parties was subject to arbitration. Maietta took the position that the chancellor had exclusive jurisdiction to determine all the issues and facts involved in the dispute. After hearing argument and reviewing the contract between the parties, the chancellor entered an order, dated February 1, 1972, directing the parties to proceed by arbitration. On April 6, 1972, the chancellor filed an opinion and entered an order approving the substitution of a surety bond in the amount of $230,000.00 in place of the mechanic's lien claimed by the appellants in the amount of $191,155.03. Maietta appealed from both orders.

## AN ORDER DIRECTING ARBITRATION IS NOT APPEALABLE

The contract between Maietta and Security provides in paragraph 24 thereof that:

> "In the case of dispute in regard to any of the articles of this Contract, if arbitration is provided for in the agreement between the Owner and the Contractor, same shall apply with equal force to this Contract."

Article 7.10.1 of the contract between the owner, Urban Development Company and Associates, and Security states, with exceptions not pertinent here, that "claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . , shall be decided by arbitration, in accordance with the Construction Arbitration rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise." The agreement between the owner and Security goes on to provide that the agreement to arbitrate shall be specifically enforceable, that the arbitration award shall be final, "and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." *Ibid.*

In 1965, Maryland adopted the Uniform Arbitration Act, now found as Article 7 of the Code (1966 Repl. Vol.). Article 7, § 1 provides as follows:

> "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This article does not apply to an arbitration agreement between employers and employees or between their respective representatives unless it is expressly provided in such agreement that this article shall apply."

Article 7, Section 18 specifies those orders entered in connection with an arbitration proceeding from which an appeal may be taken. These are:

(1) An order denying an application to compel arbitration made under § 2;
(2) an order granting an application to stay arbitration made under § 2 (b) ;
(3) an order confirming or denying confirmation of an award;

(4) an order modifying or correcting an award;

(5) an order vacating an award without directing a rehearing; or

(6) a judgment or decree entered pursuant to the provisions of this article."

Paragraph 24 of the contract between Maietta and Security incorporates by reference article 7.10.1 of the agreement between Security and the owner which requires that "all claims, disputes and other matters in question arising out of, or relating to," the contract "or the breach thereof," are to "be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." Interpreting paragraph 24 of their contract to require arbitration, the chancellor directed the parties to proceed by arbitration. We think he was correct in that, but, in any event, his order to arbitrate is a non-appealable, interlocutory order and not one of the orders from which an appeal may be taken by virtue of Article 7, Section 18, *supra.*

In adopting the Uniform Arbitration Act and in limiting the categories of orders thereunder from which an appeal would lie, the General Assembly acted to encourage arbitration where the parties had contracted to arbitrate and limit the appeal of interlocutory orders entered prior to a final judgment of a court confirming, or denying the confirmation of, the arbitrators' award. At the present time, at least fourteen States, including Maryland, have adopted a Uniform Arbitration Act. All these statutes are very similar in their essential provisions.[1]

---

1. Alaska Stat. § 09.43.010 *et seq.;* Ariz. Rev. Stat. Ann. § 12-1501 *et seq.;* Ill. Rev. Stat. ch. 10 § 101 *et seq.;* Ind. Code § 34-4-2-1 *et seq.;* Me. Rev. Stat. Ann. tit. 14 § 5927 *et seq.;* Mass. Gen. Laws Ann. ch. 251 § 1 *et seq.;* Mich. Comp. Laws Ann. § 600.5001 *et seq.;* Minn. Stat. Ann. § 572.08 *et seq.;* Nev. Rev. Stat. § 38.015 *et seq.;* N.M. Stat. Ann. § 22-3-9 *et seq.;* S.D. Comp. Laws Ann. § 21-25A-1 *et seq.;* Tex. Rev. Civ. Stat. Ann. art. 224 *et seq.;* Wyo. Stat. Ann. § 1-1048.1 *et seq.*

The issue of the appealability of an order directing parties to arbitrate under a contract calling for arbitration, as provided for in Article 7, Section 1, *supra,* is one of first impression in this Court. Although cases on the precise point in other jurisdictions are limited, in at least two of the States which have adopted a Uniform Arbitration Act similar to that in effect in Maryland, it has been held that an order directing arbitration is an interlocutory, nonappealable order. Thus, in *Roeder v. Huish,* 105 Ariz. 508, 467 P. 2d 902. (1970), the Arizona Supreme Court dismissed an appeal from an order of a trial court directing arbitration under a contract for the construction of a home where the contract contained an arbitration clause. The Arizona Uniform Arbitration Act sets out those orders which are appealable in connection with arbitration proceedings.[2] That provision of the Arizona statute is identical with Article 7, Section 18 of the Maryland Code. In upholding the dismissal of the appeal in *Roeder,* the Supreme Court of Arizona said: "We here hold that a party can raise the issue of arbitrability or waiver of right to arbitrate by objecting to the trial court's confirmation of the arbitration award." *Id.* at 904. See also *Johnson v. Village of Plymouth,* 281 Minn. 232, 161 N.W.2d 306 (1968), where an order directing arbitration was held nonappealable under identical provisions of the Minnesota Uniform Arbitration Act.

The same result was reached in *Laufman v. Hall-Mack Co.,* 215 Cal. App. 2d 87, 29 Cal. Rptr. 829 (1963), where it was held that an order directing arbitration under § 1294 of the California Code of Civil Procedure was not appealable. While California does not have an arbitration act precisely identical to the Maryland statute, the provision of the California statute which limits the categories of appeals in arbitration cases is very similar to Article 7, Section 18 of the Maryland Code.[3] In denying the appeal from an order to arbitrate in the *Laufman*

2. Ariz. Rev. Stat. Ann. § 12-2102-01.
3. Cal. Code of Civ. Pro., § 1294.

case, the California court went on to quote from *Jardine, Matheson & Co., Ltd. v. Pacific Orient Co.*, 100 Cal. App. 572, 280 P. 697 (1929) as follows:

> "the fact that the Legislature saw fit to specify in one code section the different orders and judgment from which appeals may be taken clearly indicates, in our opinion, an intention to restrict the appeals in such proceeding to orders and judgment therein specified, *and the obvious reason for not including among such appealable orders the one which directs the parties to proceed with the arbitration was that if at the very threshold of the proceeding the defaulting party could appeal and thereby indefinitely delay the matter of arbitration, the object of the law and the purpose of the written agreement of the parties would be entirely defeated.*" (emphasis added) *Laufman* at 831.

Although we have not had occasion to pass on the precise issue prior to this case, clearly Judge Rutledge's order directing the parties to arbitrate pursuant to their own contract to do so is an interlocutory, nonappealable order.[4] If he was in error in directing arbitration, which

---

4. At common law, it was established that unless an agreement to arbitrate had been consummated by an arbitrators' award, there was no bar to a suit at law or in equity with respect to a question which the parties had agreed to be arbitrated. Tomlinson v. Dille, 147 Md. 161, 167, 127 A. 746 (1925). Under that state of the law, of course, an order directing a party to arbitrate was a final appealable order. In some States, moreover, arbitration is deemed to be a special proceeding provided for by statute and, hence, an order to proceed to arbitration is a final order from which an appeal may be taken under statutes or rules of court permitting appeals from final orders in special proceedings. Hosiery Mfrs. Corp. v. Goldston, 238 N. Y. 22, 143 N. E. 779 (1924); Dewart v. Northeastern Gas Transmission Co., 139 Conn. 512, 95 A. 2d 381 (1953); and see 94 A.L.R.2d 1071 (1964). One of the prime purposes of the Uniform Arbitration Act is to bar appeals which would have the effect of delaying or avoiding arbitration and thereby defeating the objectives of the statute as well as discounting the agreement into which the parties had entered. Jardine, Matheson & Co., Ltd. v. Pacific Orient Co., supra. Its adoption supplants both the common law and "special proceedings" rule which permit the appeal of an order directing arbitration.

we do not at all intimate he was, that matter can be raised on an appeal from any final judgment the chancellor subsequently may enter either confirming or denying confirmation of the arbitrators' decision. To permit an appeal of his interlocutory order of February 1, 1972 at this stage would run directly counter to obvious legislative purposes in enacting the Uniform Arbitration Act.

## ANY CONTROVERSY AS TO ARBITRABILITY IS MOOT

In their reply brief, the appellants retreated from their initial claim that the chancellor was in error in directing the parties to arbitrate and conceded that the provisions of the contract between the parties encompassed "the matter in dispute in the instant case." [5] Appellants' remaining contention concerning arbitrability (a claim which they repeated in oral argument) was "that the only agreement to arbitrate is set forth in paragraph 24 of the contract" between Maietta and Security. In oral argument, appellees' counsel insisted that paragraph 16 of the same contract would have to be taken into account by the arbitrators. Section 16 covers situations that arise if the subcontractor refuses or neglects to supply sufficient skilled workmen or materials of proper quality, or becomes insolvent or refuses to follow plans or specifications or fails in any respect to comply with the terms of the contract. However, at oral argument, counsel for Maietta and Security both agreed that the interpretation of paragraph 16, like any of the other provisions of the contract, is a matter for the arbitrators in the first instance. Their belated agreement concerning the authority of the arbitrators is in accord with the rule in Maryland and in other jurisdictions. *Nelley v. Mayor and City Council of Baltimore*, 224 Md. 1, 166 A. 2d 234 (1960) ; *Chillum-Adelphi Volunteer Fire Dep't., Inc. v. Button & Goode, Inc.*, 242 Md. 509, 516, 219 A. 2d 801 (1966) ;

---

5. Appellants' Reply Brief p. 4.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U. S. 395, 87 S. Ct. 1801, 18 L.Ed.2d 1270 (1967).

Thus, it appears that the parties now agree that (1) the dispute between them is subject to arbitration, and (2) that all of the provisions of the contract, including paragraph 16, are covered by the arbitration clause and constitute matters which lie initially within the competence of the arbitrators to interpret and decide. The case then is moot. It is axiomatic that appellate courts do not sit for the purpose of giving opinions on moot questions and an appeal which, like this one, presents nothing else for decision must be dismissed as a matter of course. *Potts v. Governor of Maryland,* 255 Md. 445, 449, 258 A. 2d 180 (1969) ; *State v. Sheridan,* 248 Md. 320, 236 A. 2d 18 (1967).

Despite all this, during oral argument both sides urged that we expressly advise the chancellor that the arbitration authorized by paragraph 24 of the contract includes the interpretation of paragraph 16 of the same contract. As we have indicated, that proposition is clear and now not disputed by either side. If the parties need further assistance in clarifying the obvious, they can direct their concerns to the chancellor. We are confident, however, that if such an unnecessary inquiry were put to him, the trial judge would reassure the parties, as we have attempted to do, that the interpretation of all of the provisions of the contract between Maietta and Security, including paragraph 16, is a function which falls within the initial jurisdiction of the arbitrators pursuant to the agreement between the parties.

## THE ORDER SUBSTITUTING BOND FOR THE MECHANIC'S LIEN IS NOT APPEALABLE

The mechanic's lien which Maietta filed covered a claim of $191,155.03. Granting a petition filed by Security under Rule BG 75 b, the chancellor released the mechanic's lien upon the filing of a surety bond by Security in the amount of $230,000.00, an amount sufficient

to pay the sum claimed by Maietta, plus accrued interest and costs. The appellants opposed the bond approved by the chancellor, and have appealed from his order approving the surety bond and releasing the mechanic's lien.

Were the question before us, it is likely that the Court would hold that the bond approved by the chancellor complied with Rule BG 75 b and adequately protects the interest of the appellants, should they prevail in their action. However, on the facts of this case, the issue is one which we need not decide. The appeal from the chancellor's order approving the bond and releasing the mechanic's lien is an attempt to appeal from an interlocutory order not expressly included among the interlocutory orders of a court of equity which can be appealed before final judgment by virtue of Article 5, Section 7 of the Maryland Code. *Rocks v. Brosius,* 241 Md. 612, 647, 217 A. 2d 531 (1966).

> *Appeal dismissed; case remanded for further proceedings not inconsistent with this opinion; appellants and appellees each to pay one-half of the costs.*